# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **ELIZABETH DANIEL** ) | |
| **GASAWAY, et al.**, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action Number |
| v. ) | **3:11-cv-1587-AKK** |
| ) | |
| **JEREMY SHANE HALL, et al.**, ) | |
| ) | |
| Defendants. ) | |

## ORDER AND MEMORANDUM OPINION

Before the court is Chris Hargett's ("Hargett") Motion to Dismiss Elizabeth Daniel Gasaway ("Gasaway"), Sarah Elizabeth Mayfield ("Mayfield"), Christy Trapp Sanders ("Sanders"), and Christy Kelton's ("Kelton") (collectively "Plaintiffs") Second Amended Complaint.  Doc. 49.  For the reasons stated herein, Hargett's motion is **GRANTED**, as it relates to the state law claims, and **DENIED**, in all other respects.

### I.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "[T]he pleading standard Rule 8 announces does not require 'detailed

factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). Thus, when considering a motion to dismiss, the court accepts all factual allegations as true. *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). However, legal conclusions, unsupported by factual allegations, are not entitled to that assumption of truth. *Iqbal*, 129 S. Ct. at 1950. A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This demands "more than a sheer possibility that a

defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). The Eleventh Circuit instructs that Rule 12(b)(6) "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

### III.   FACTUAL AND PROCEDURAL BACKGROUND

At various times from November 17, 2010 until March 16, 2011, Plaintiffs were incarcerated at the Municipal Jail for the City of Russellville, Alabama ("the Jail"). Doc. 47 ¶¶ 3-6, 35, 42, 62, 82. During these relevant dates, the City of Russellville employed defendant Jeremy Shane Hall ("Hall") as a prison guard at the Jail for the 6:00 p.m. to 6:00 a.m. shift. *Id.* ¶¶ 7, 13. Hall worked alone and unsupervised during his shift. *Id.* ¶ 22. Hargett served as the Chief of Police for the City of Russellville during this time period. *Id.* ¶ 8. Pertaining to the motion here, Hargett implemented and enforced the Jail's operational policies and customs, *id.* ¶¶ 11, 13, and established the work schedules of Hall and other

jailers, *id.* ¶ 13.

The occurrences alleged in this case are quite disturbing to say the least. The complaint asserts that Hall removed Plaintiffs from their cells and forced them to perform sexual acts. *See id.* ¶¶ 35-92. As their jailer, Hall had complete control over Plaintiffs. These alleged sexual assaults include, but are not limited to, oral sex, forced exposure of genitalia, harassment, and rape. *Id.* Moreover, "at least six (6) months before Hall's first act of sexual abuse upon these Plaintiffs[,] at least one former female inmate and one police officer employed by the City complained to Hargett and Mayor Troy Oliver [("Oliver")] about Hall's acts of sexual abuse." *Id.* ¶ 16. As a result, "Oliver and Hargett began an investigation of these allegations of sexual abuse and . . . Hargett discussed the allegations of sexual misconduct with Hall." *Id.* ¶¶ 17, 18. Based on this investigation, Oliver "established a policy whereby officers are prohibited from removing female inmates from their cells at night." *Id.* ¶ 19. Oliver informed Hargett of this policy, and Hargett informed Hall of the same. *Id.* However, Hargett "failed to schedule at least one other officer during the period of 6:00 p.m. and 6:00 a.m. to assist Hall with the handling of female inmates during Hall's shift." *Id.* ¶ 22. In other words, Hargett again left Hall alone with the inmates. Unfortunately, to no surprise, Hall apparently continued engaging in his deplorable conduct. Thereafter, due to

continued allegations of sexually assaulting inmates, "Hall was again advised [by Hargett] about the policy prohibiting a male officer's removal of female inmates from their cells at night." *Id.* ¶ 20.

In March of 2011, the Alabama Bureau of Investigation ("ABI") began investigating Hall's conduct. *Id.* ¶ 26. In response, Hargett finally placed Hall on administrative leave, and on March 28, 2011, the "ABI arrested Hall on three (3) counts of custodial sexual abuse." *Id.* ¶¶ 25, 27. Regarding the placement of Hall on administrative leave, Hargett stated "[t]he rule violation (stems from) something we told [Hall] to fix and he didn't do it." *Id.* ¶ 29 (citations and internal quotation marks omitted, alterations in original).

On September 16, 2011, Plaintiffs filed their Second Amended Complaint against Hall and Hargett in their individual capacities. Doc. 47. Hargett moved to dismiss the claims made against him, doc. 49, and the parties have fully briefed this matter, docs. 53, 54. The court now turns to the parties' respective arguments.

### III.   ANALYSIS

Plaintiffs bring two counts against Hargett—deliberate indifference to inmate health or safety in violation of the Fourteenth Amendment under 42 U.S.C.

§ 1983 (Count IV)[1] and claims for negligence, carelessness, and unskillfulness under Alabama state law (Count VIII).  *See* doc. 47 ¶¶ 116-126; 137-140.  Hargett argues that the doctrine of qualified immunity bars Plaintiffs' § 1983 claims, *see* doc. 49, at 8, and that Plaintiffs' common law allegations fail to state a cognizable claim under Alabama law, *see* doc. 49, at 20.

### A.   Qualified Immunity from Plaintiffs' § 1983 Claims

"Qualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)).  To receive qualified immunity from suit, "the government official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Mathews v. Crosby*, 480 F.3d 1265, 1269 (11th Cir. 2007).  The

---

[1] Plaintiffs also assert their deliberate indifference claim under the Fourth Amendment. *See* doc. 47, at 19 (Count IV).  However, the right against deliberate indifference to a known, substantial risk of serious harm to inmates more accurately derives from the Eighth Amendment as incorporated by the Fourteenth Amendment.  *See Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) (citing *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001)); *see also Williams v. Limestone Cnty., Ala.*, 198 F. App'x 893, 896 n.3 (11th Cir. 2006) (stating that "the standard for violations of the Eighth Amendment apply to pretrial detainees through the due process clause" of the Fourteenth Amendment).  In response to the motion here, Plaintiffs utilize only Eighth Amendment or Fourteenth Amendment authority, and Plaintiffs cite the Eighth and Fourteenth Amendments in their statement of jurisdiction.  Doc. 47, at 1; doc. 53 (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010); *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006)).  Accordingly, the court limits its "deliberate indifference" analysis to potential violations of the Fourteenth Amendment.

burden then shifts to the plaintiff to demonstrate that qualified immunity is not appropriate. To do so, plaintiffs must show: (1) "the government official's conduct violated a constitutional right" and (2) preexisting federal law "clearly established" this right. *Id.* (citing *Saucier*, 533 U.S. at 201). Recently, the Supreme Court provided that "judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. Therefore, "[g]overnment officials performing discretionary functions are entitled to qualified immunity 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1424 (11th Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The parties do not dispute that Plaintiffs' § 1983 claims arise from actions within the scope of Hargett's discretionary authority. *See* doc. 49, at 10 n.2; *see generally* doc. 53. Accordingly, the court's analysis must focus on the alleged Fourteenth Amendment violation for deliberate indifference and whether such actions violate clearly established federal law.

    i.    *Deliberate Indifference to Inmate Health or Safety*

"A prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the [Fourteenth] Amendment. A Fourteenth Amendment violation occurs when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) (alteration in original, citations and quotation marks omitted). Thus, possible constitutional violations due to deliberate indifference mandate a two tier analysis. First, "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). A "prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).² Second, the plaintiff must demonstrate that the prison official exhibited a deliberately indifferent mental state. *Id.* This requires "a state of mind more blameworthy than negligence," but "something less than acts or

---

² The plaintiff in *Farmer* brought claims under the Eighth Amendment because the alleged constitutional violations occurred post-conviction, 511 U.S. at 835; however, as previously stated, *see supra* n.1, the "deliberate indifference" analysis for pretrial detainees under the Fourteenth Amendment mirrors the Eighth Amendment analysis. *See Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Williams*, 198 F. App'x at 896 n.3 (stating that "the standard for violations of the Eighth Amendment apply to pretrial detainees through the due process clause" of the Fourteenth Amendment). As such, here, it is of no importance that Plaintiffs neglect to delineate the specific reasons for their individual incarcerations—the deliberate indifference standard is the same for convicted prisoners and pretrial detainees.

omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Accordingly, it is "fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. Moreover, the Court established that this "recklessness" demands a subjective inquiry such that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838.

Therefore, citing *Farmer*, the Eleventh Circuit instructs that "to find deliberate indifference on the part of a prison official, a plaintiff [] must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010). Inherent in such analysis is whether the official "'knowingly or recklessly declined to take actions that would have improved the conditions.'" *Id.* (quoting *LaMarca v. Turner*, 995 F.2d 1526, 1537 (11th Cir. 1993)). As a result, "prison officials who actually knew of a substantial risk to inmate health or safety may be free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Indeed, "if an official attempts to remedy a constitutionally deficient prison

condition, but fails in that endeavor, he cannot be deliberately indifferent unless he knows of, but disregards, an appropriate and sufficient alternative." *LaMarca*, 995 F.2d at 1536.

For purposes of this motion to dismiss, Plaintiffs sufficiently *allege* deliberate indifference to a serious risk of harm by Hargett in violation of the Fourteenth Amendment.[3] Hargett argues that Plaintiffs' allegations regarding his conduct, even if taken as true, do not establish the requisite "subjective recklessness." Doc. 49, at 15 (citing *Farmer*, 511 U.S. at 839-40). Put differently, Hargett maintains that deliberate indifference requires a state of mind "more blameworthy than negligence," and that Plaintiffs fail to allege such "gross negligence" on his part. *See id.* Specifically, Hargett asserts that Plaintiffs "admit in their complaint that after Chief Hargett supposedly learned that Hall was removing female inmates from their respective cells at night, he began an investigation into such and then discussed the allegations with Hall." Doc. 49, at 16. Moreover, Hargett further maintains that Plaintiffs admit that after Mayor Oliver initiated a new policy regarding the removal of inmates from their cells,

---

[3] When analyzing a motion to dismiss, the court must take all factual allegations as true, *see Iqbal*, 129 S. Ct. at 1949; and therefore, the court reiterates that it is *not* reaching the merits of this potential constitutional violation. *See also Saucier*, 533 U.S. at 201 (asserting that the proper inquiry is whether "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?").

"Chief Hargett took the initiative to enforce it by specifically advising Hall of the policy . . . and that thereafter when Hall allegedly violated the policy, he was *again* advised . . . not to remove female inmates from their cells at night." *Id.* (citations omitted, emphasis in original). Therefore, Hargett contends that "rather than ignoring and being indifferent to the alleged risk, Chief Hargett reasonably acted by putting into force the new policy and then repeatedly advising Hall about his conduct." *Id.* at 17.

The court finds, however, that Hargett's conduct could plausibly constitute recklessness.[4] While the court acknowledges that "deliberate indifference is a stringent standard of fault," *Williams v. Limestone Cnty., Ala.*, 198 F. App'x 893, 898 (11th Cir. 2006), Plaintiffs' allegations raise the reasonable inference that Hargett's actions constitute deliberate indifference to a serious risk of harm. *See Iqbal*, 129 S. Ct. at 1950. Specifically, Plaintiffs contend that, prior to the sexual abuse at issue here, Hargett had actual knowledge of previous instances where Hall sexually abused female inmates. Doc. 47 ¶ 16. Moreover, while Plaintiffs admit that Mayor Oliver instituted a new policy regarding inmates—perhaps to

---

[4] Hargett's motion to dismiss, doc. 49, focuses on the subjective reckless element of Plaintiffs' deliberate indifference claim. Hargett does not refute that Hall's behavior created an objectively "serious risk of harm;" therefore, for purposes of this motion, the court assumes that Plaintiffs were "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

directly address Hall's past conduct— nonetheless, Plaintiffs maintain the policy proved ineffective because "Hall sexually abused female inmates after being advised of the policy." *See* doc. 53, at 7.  Furthermore, Plaintiffs allege that despite knowing about these subsequent attacks, Hargett merely reminded Hall of Oliver's policy, rather than taking more appropriate actions.  *Id.*  Indeed, Hall remained assigned "to the evening shift without either supervision or the assistance of another officer," *id.*, and, thus, had free access to these powerless women despite Hargett's knowledge of Hall's propensity to abuse inmates.  Finally, Plaintiffs maintain that Hargett only removed Hall from duty when the ABI began its investigation.  *Id.*

     Given the allegations that Hargett possessed actual knowledge of numerous instances where Hall sexually abused female inmates yet continued to allow Hall unfettered access to female inmates, the court can reasonably infer that Hargett operated with "a state of mind more blameworthy than negligence," but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.  Hargett may have attempted to remedy the situation, but the court finds sufficient allegations that Hargett disregarded "an appropriate and sufficient alternative" remedy.  *See LaMarca*, 995 F.2d at 1536.  As such, the court determines that discovery is

warranted on this issue to develop a more complete factual record of the events that transpired.

    *ii.*    *Clearly Established Law*

Moreover, the right against deliberate indifference to a serious risk of harm is clearly established by existing federal law. Beyond an alleged constitutional violation, qualified immunity demands that "'the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances.'" *Bozeman v. Orum*, 422 F.3d 1265, 1273 (11th Cir. 2005) (quoting *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002)). The Eleventh Circuit recognizes "three sources of law that would put a government official on notice of statutory or constitutional rights: [1] specific statutory or constitutional provisions; [2] principals of law enunciated in relevant decisions; and [3] factually similar cases already decided by state and federal courts in the relevant jurisdiction." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1330 (11th Cir. 2007). However, the Supreme Court made clear in *Hope v. Pelzer* that the phrase "factually similar cases" does not necessarily require the exact same fact pattern, and "officials can still be on notice that their conduct violates established law even

in novel factual circumstances." 536 U.S. at 741.  Indeed, "the salient question . . . is whether the state of the law . . . gave [defendants] fair warning that their alleged treatment . . . was unconstitutional." *Id.*

Eleventh Circuit precedent clearly establishes that a prison administrator can "face liability under § 1983 predicated on his failure to take reasonable steps in the face of a history of widespread abuse . . . which resulted in deliberate indifference."  *See Mathews*, 480 F.3d at 1275 (recognizing *LaMarca v. Turner*, 995 F.2d 1526, as clearly established law).  In *LaMarca v. Turner*, the court considered claims for deliberate indifference against the superintendent of the Glades (Florida) Correctional Institution ("GCI").  Plaintiffs asserted numerous constitutional deficiencies with GCI including (1) improper staff training; (2) an out of control staff who did not report rapes, assaults, and illegal activities, (3) failure to administer measures that would minimize violations such as not stationing officers to patrol dormitories and permitting inmates to obscure the vision of officers, and (4) failure to employ any standard procedure to investigate alleged rapes. 995 F.2d at 1537-38.  The superintendent argued that he "attempted to secure additional funds, make improvements to GCI's physical plant, expand recruitment efforts [for guards], and institute policies that would have reduced the risk of violence had his staff followed them." *Id.* at 1537.  However, the court

concluded that "[w]hile much of the record indicates that [the superintendent] did make good faith efforts to resolve the dilemmas facing GCI, the evidence does support the plaintiffs' position that [the superintendent] recklessly disregarded the necessary means to protect inmate safety." *Id.* at 1538. The court found that GCI's superintendent, even faced with financial constraints, "had the means to substantially improve prisoner safety at GCI." *Id.* at 1539. "In particular, [the superintendent] could have taken significant steps to eliminate the highly permissive atmosphere at GCI both as to officers shirking their duties and as to prisoners engaging in extortion, harassment, sexual activity, and sexual and other assaults." *Id.* at 1539. And indeed, deliberate indifference occurs when the prison administrator "recklessly disregarded the inadequacy of the approach he took, the availability of other approaches, and their capacity to provide a cure." *Id.* at 1541.

The clearly established law also provides that sexual abuse of inmates by prison officials can constitute an Eighth Amendment violation. *See Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006). In *Boxer X*, the Eleventh Circuit considered the complaint of a male prisoner that a prison guard "made him strip and masturbate for her enjoyment." *Id.* at 1109. The court joined other circuits in finding that "severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment." *Id.* at 1111. Indeed, the court provided that

"'[s]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* (quoting *Boddie v. Schnieder* 105 F.3d 857, 861 (2d Cir. 1997)).[5]

Based on *LaMarca*, *Mathews*, and *Boxer X*, a reasonably objective officer, placed in Hargett's alleged circumstances, would find that Hargett violated the clearly establish law regarding deliberate indifference to a serious risk of harm. Specifically, *Boxer X* establishes that severe sexual abuse of inmates by prison officials violates the inmates' constitutional rights. According to Plaintiffs, Hargett allegedly knew that Hall committed several acts of severe sexual abuse prior to the attacks on Plaintiffs. At the pleadings stage, this allegation sufficiently reveals a pattern of abuse. Moreover, *LaMarca* establishes that some "good faith" effort to remedy constitutional deficiencies will not preclude a finding of deliberate indifference when there are other reasonably available remedies. In that regard, while Hargett maintains that he took some remedial steps after learning of Hall's previous misconduct, based on the allegations here, the

---

[5] The Eleventh Circuit ultimately found no constitutional violation in *Boxer X* because "a female prison guard's solicitation of a male prisoner's manual masturbation, even under the threat of reprisal, does not present more than *de minimis* injury." 437 F.3d at 1111. However, such conclusion is irrelevant here because Plaintiffs allege, among other things, the forced giving of oral sex and rape, *see* doc. 47 ¶¶ 35-92—severe acts of sexual abuse that, if true, certainly present more than *de minimis* injury.

"good faith" measure of "putting into force the new policy and then repeatedly advising Hall about his conduct," *see* doc. 49, at 17, satisfies, at most, a minimal effort to remedy the situation.  After all, *LaMarca* gives fair warning to prison officials that liability for deliberate indifference can occur when the official has "the means substantially to improve prisoner safety" but recklessly fails to employ these means.  995 F.2d at 1539.  Based on the allegations here, Hargett had the means to place Hall on administrative leave—he did so once the ABI began investigating Hall.  Doc. 47 ¶ 25.  Yet, armed with actual knowledge of Hall's propensity to sexually abuse female inmates, Hargett failed to promptly take this available remedy, left Plaintiffs alone on the 6 p.m. to 6 a.m. shift, and, in essence, permitted Hall to sexually assault Plaintiffs.  *See* doc. 47 ¶¶ 16-28.

Thus, the court **DENIES** Hargett's motion to dismiss the § 1983 claim under the doctrine of qualified immunity.  The court finds a sufficiently well pled violation of the Fourteenth Amendment under clearly established law regarding deliberate indifference to a serious risk of harm.  However, given that the court is limited to Plaintiffs' factual allegations, this denial is **without prejudice**.  After the parties engage in discovery, Hargett may renew his motion if the facts support such a qualified immunity defense.

B.     **Plaintiffs' State Law Claims Against Hargett**

Plaintiffs also assert claims of "neglect, carelessness, or unskillfulness" against Hargett. Doc. 47 ¶¶ 137-140. While Plaintiffs fail to articulate the source of these charges in the complaint, *see id.*, in response to Hargett's motion to dismiss, Plaintiffs assert that Hargett, in his individual capacity, violated ALA. CODE § 11-47-190. Doc. 53, at 12; doc. 47. However, ALA. CODE § 11-47-190 pertains to *municipal liability*. The Alabama statute provides in relevant part:

> *No city or town shall be liable* for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty . . . .

*Id.* (emphasis added). Plaintiffs cite no authority, and the court is unable to find any Alabama case law asserting that this statute also applies to city police chiefs acting in their individual capacity. *See generally* doc. 53, at 12-14. *See e.g.*, *Hawkins v. City of Greenville*, 101 F. Supp. 2d 1356, 1364 (M.D. Ala. 2000) ("Under [ALA. CODE § 11-47-190], where a plaintiff alleges a factual pattern that demonstrates neglect, carelessness, or unskillfulness of an agent of the city, the plaintiff has stated a cause of action *against a municipality*."); *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1314 (S.D. Ala. 2001) (refusing to find defendant *city* liable under ALA. CODE § 11-47-190 because plaintiffs failed to sufficiently

establish that city's agent committed a cognizable tort under Alabama law).

Therefore, Plaintiffs fail to state a cognizable claim against Hargett under ALA. CODE § 11-47-190, and Hargett's motion to dismiss this count is **GRANTED**. The court **DISMISSES** Plaintiffs' claims under ALA. CODE § 11-47-190 **with prejudice**.

**DONE** this 5th day of December, 2011.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE